OPINION OF THE COURT
Harold Baer, Jr., J.
The motion by plaintiff, New York City (City), for summary judgment, pursuant to CPLR 3212, and the cross motion by defendant, United States Fidelity and Guaranty Company (USF&G), for the same relief, are consolidated for disposition. Summary judgment is granted to the City.
The City solicited bids for data processing work in accordance with section 343 of the New York City Charter and section 103 of the General Municipal Law. The EBS Data Processing, Inc., and Broad Data Systems, Inc., a joint venture (EBS), submitted a bid of $151,359.60 along with the required bid bond issued by USF&G equal to 10% of the bid ($15,135.96) and was the low bidder. The notice of award was officially forwarded to EBS on July 25, 1977. The notice read in part:
*726 “1. Arrange for the execution in triplicate of the Performance and Payment bonds in your contract by you and by a qualified Surety Company * * *
“2. Submit one (1) original and one (1) duplicate of all certificates and policies of insurance * * *
“The above requirements shall be completed within ten (10) days after receipt of this notice.”
The bid bond required as conditions precedent to commencing work that the low bidder acquire payment and performance bonds (and certificate) and policies of insurance within 10 days after notification by the City. Those conditions were promulgated pursuant to subdivision e of section 343 of the New York City Charter which states in relevant part: “Every proposal for bids shall contain a provision that in the event of the failure of the bidder to execute the contract and furnish the required security within ten days after notice of the award of the contract to him, his deposit or so much thereof as shall be applicable to the amount of the award made to him shall be retained by the city”. The bid bond by its terms remained in effect until these conditions were met. Although subdivision d of section 343 of the New York City Charter provides that bid requirements may be waived in some cases, the requirements were clearly mandated here.
EBS failed to comply with the conditions precedent to execution and thereby failed to satisfy the conditions of the bid bond. The City rescinded its acceptance of the bid for failure to so comply.
The defendant asserts that by allowing EBS to perform for four and one-half months the City has waived any claim it may have to the proceeds of the bond. Even conceding the validity of USF&G5s claim that performance by EBS constituted a waiver, the surety is still liable under the bid bond. The defendant further contends that everybody overlooks the required performance bond, etc., and that in previous dealings the City had overlooked such requirements and, therefore, the City ought not be permitted to prevail here. This argument, too, is unavailing. The bid bond simply does not provide for an exemption from liability because its requirements are sometimes overlooked. Furthermore, parties who contract with the City should be *727 compelled to follow the bidding requirements as set forth in the New York City Charter and General Municipal Law. It is fervently to be hoped, however, that after innumerable investigations into problems relating to bid letting, the City, too, would adhere carefully to these rules.
The assertion that the settlement with the City for work performed by EBS precludes this action is without merit. The settlement disposed of this action which was in quantum meruit, not breach of contract as no contract ever existed. The release entered into by EBS in connection with that settlement covered only claims existing in favor of EBS against the City. “This release is limited to any and all claims arising directly or indirectly out of a claim for payment of services rendered by EBS Data Processing, Inc., to the City of New York, Human Resources Administration, from July 1, 1977, through June 30, 1978”. The language of the release itself underscores the fact that the settlement with the City did not include this action against USF&G.
The City is entitled to the relief sought in the complaint and interest thereon. No showing of actual damage to the City is necessary: “Where the law imposes by statute a penalty for the doing or failure to do a particular act, it is no defense that the failure has not caused damages equal to the statutory penalty, and the wrongdoer is not the less liable for the full penalty if under the authority of law a bond is taken to secure performance.” (5 Williston, Contracts, § 775B, p 661; see United States v Dieckerhoff, 202 US 302, 313; United States v Zerbey, 271 US 332, 340.) In cases such as this, where the statute fixes the measure of damages, courts are not at liberty to relieve against it. As a unanimous court wrote in Lyman v Perlmutter (166 NY 410, 413): “In cases between the government and a private party, in which the purpose of the bond is to secure an observance of the law in pursuance of which the bond is given, and punishment or satisfaction for its non-observance, then the penalty named in the bond is the measure of damages for its breach, unless the statute under which the bond is given or the bond itself, read in the light of the statute, indicates a less or different measure. In such cases in which the statute fixes the measure of damages the *728 courts cannot relieve against it, unless authorized by statute to do so.” This has been the law of the land for at least 100 years. (See Clark v Barnard, 108 US 436, 457.) A recent New York case confirms the fact that the law is the same today. City of Rye v Public Serv. Mut. Ins. Co. (34 NY2d 470) was an action to recover on a security bond. There the New York Court of Appeals at page 472 found: “Concededly, no statute authorizes the city to exact a penalty or forfeiture from the developers. If there were such a statute, the statutory penalty would undoubtedly be upheld”.
The penalty in this action is similar in nature to a statutory penalty for nonperformance of a statutory duty. Nonetheless, it is not to be overlooked that the expense of reletting and the delay associated therewith may constitute real and significant expenditures by the City.
The amount recoverable by the City is governed by CPLR 2502 (subd [c]) and 2511. These sections state that the liability of a “surety shall be determined in accordance with the provisions of section 7-301 of the general obligations law [L 1970, ch 848, eff Sept. 1, 1970]”, which provides as follows: “When any undertaking executed within or without the state specifies that it is to be void upon payment of an amount or performance of an act, the undertaking shall be deemed to contain a covenant either to pay the amount or to perform the act specified. In the event of payment, the amount recoverable from a surety shall not exceed the amount specified in the undertaking except that interest in addition to this amount shall be awarded from the time of default by the surety.” Interest, therefore, is to be assessed from 10 days following notice of the award (i.e., from Aug. 6, 1977).
There being no triable issues of fact remaining, plaintiff’s motion for summary judgment is granted, defendant’s cross motion for summary judgment is denied. This decision does not preclude USF&G from pursuing its third-party action for indemnity against EBS.